[Civ. No. 6703.  First Appellate District, Division One.—March 19, 1929.]

G. J. FANNING et al., Appellants, v. MERCHANTS NATIONAL TRUST AND SAVINGS BANK (a Corporation), Formerly HELLMAN COMMERCIAL TRUST AND SAVINGS BANK (a Corporation), Respondent.

Andrew J. Copp, Jr., for Appellants.

Rohe & Freston and Harold P. Curtis for Respondent.

THE COURT.—Plaintiffs brought this action to recover from defendant bank the sum of $6,500. The claim was alleged in separate counts, one for money had and received, the second for damages due to the alleged violation of an escrow agreement, and in addition equitable relief was sought, namely, reformation of the escrow agreement.

The trial court found for the defendant, and from the judgment the plaintiffs have appealed.

On September 25, 1925, plaintiff G. J. Fanning and one Harry C. Otto entered into an escrow agreement with the defendant, which was as follows:

"Escrow Instructions.  No. 680.
"Escrow Clerk, Florence K. Patton.
"Los Angeles, Cal., Sept. 25, 1925.
"Hellman Commercial Trust and Savings Bank:

"I will hand you $1,000.00 and Trust deed note for $6,500.00 which you are instructed to use, provided within

30 days you can exhibit guarantee or continuation of Title Guarantee and Trust Company's and/or Title Insurance and Trust Company's guarantee of title on the real property in the city of Los Angeles, California, described as follows: North 50 feet of the south 100 feet of lot 17–18–19 of the Marlborough Tract, showing title vested in Henry C. Otto and Mabel Otto, his wife, as joint tenants, free of incumbrances except taxes for the fiscal year 1925–26.

"Conditions, restrictions, reservations and rights of way of record.

"Street bonds amounting to approximately $279.33;

"A mortgage or trust deed to be placed by the buyer in an amount not to exceed $25,000.00;

"A trust deed for $6,500.00 to be executed by the vestees in favor of G. J. Fanning and Estella Fanning, his wife, as joint tenants, due on or before six months after date with interest at 8% per annum to be paid at maturity.

"You are to secure assignment in blank of above trust deed note and hold in escrow together with $6,500.00, which I will hand you, which is to be held until the maturity of the note or until I instruct you to pay off the trust deed.

"I will also hand you $750.00 to be paid to C. E. Barker.

"I agree to deliver to you any instruments which this escrow requires shall be executed by me.

"It is understood that the guarantee made under above instructions shall be subject to all the conditions contained in the usual form of guarantee, which does not include an examination of the record of any city except Los Angeles.

"When this transaction has been completed you will instruct the county recorder to mail to my address all documents recorded for me.

"I agree to pay $5.00 and expense of mortgage and trust deed for showing title in me in addition to the fees for recording deed.

"In the event that the conditions of this escrow have not been complied with at the expiration of the time provided for herein, you are instructed to complete the same at the earliest possible date thereafter, unless I shall have made written demand upon you for the return of the money and instruments deposited by me.

"(Signature) HARRY C. OTTO."

"Hellman Commercial Trust and Savings Bank.

"Los Angeles, Cal., Sept. 25, 1925.

"The conditions as above are hereby approved and I will hand you an assignment of contract executed by G. J. Fanning and Estella Fanning to Harry C. Otto and Mabel Otto, his wife, as joint tenants, covering property above described, which you are authorized to deliver upon payment to you for my account the sum of $1,000.00 and a trust deed note for $6,500.00 from which you will deduct your escrow charges and my proper recording fees, also charges for certificate of title with a liability of $7,500.00 called for above.

"Revenue on deed over amount supplied by Hellman Commercial Trust and Savings Bank. Instruct Hellman Commercial Trust and Savings Bank to make deed to the above described property to Harry C. Otto and Mabel Otto, his wife, as joint tenants.

"I agree to deliver to you any instruments necessary to complete this escrow.

"(Signature)  G. J. FANNING."

The agreed price for the transfer to Otto of plaintiff's interest in the property was $7,500, and plaintiffs contend that under the terms of the escrow agreement the defendant, before delivering to Otto the assignment executed by them, was to receive for their use the sum of $1,000, a note for the balance of the purchase price due on or before six months after date secured by a deed of trust of the property, both executed by Otto and his wife, and also the amount represented by the note, namely, $6,500. The first amount with the note and deed of trust were received by the defendant, which thereupon delivered the assignment to Otto. The plaintiffs claim that the defendant also received the $6,500, and that the finding to the contrary is unsupported; and further, that if this sum was not so received the defendant by delivering the assignment to Otto violated the escrow agreement to their damage in that amount.

The evidence shows and the court found that the escrow agreement was dictated by E. F. Otto, the brother and agent of the buyer, to a stenographer in the employ of defendant, and was after being signed by the buyer and G. J. Fanning delivered to the defendant. Both the agent and Fanning agree in their testimony that the latter and his wife were to execute an assignment of the note in blank for the purpose of enabling the buyer or his agent to sell the same and pay

the plaintiffs the balance of the purchase price of the property. This assignment appears to have been executed and placed with the escrow papers, but so far as shown, neither the note nor the assignment thereof was delivered to the Ottos. Subsequently the defendant caused the trust deed to be recorded. Presumably this was done for the benefit of the plaintiffs, but what disposition was made of the note the record does not disclose. However, no complaint in this regard appears to have been made by the plaintiffs either in their pleadings or at the trial. Plaintiffs claim that the paragraph of the assignment appearing over the buyer's signature, which reads: "You are to secure assignment in blank of the above trust deed note and hold in escrow together with $6,500.00 which I will hand you, which is to be held until maturity of the note or until I instruct you to pay the trust deed," shows that the defendant was to receive the above amount before delivering the assignment of the contract to the buyer. On the other hand, that portion of the agreement signed by Fanning directs the delivery of the latter assignment upon the payment of $1,000 and the receipt by the defendant of the note for the balance of the purchase price with a trust deed securing the same. In that connection E. F. Otto, the agent, in reply to a question by the plaintiffs as to whether he understood that the balance of the purchase price should be deposited with the note and deed of trust, replied: "No sir, there would have been no reason for putting that trust deed in if I was paying cash." This appears to have been the view of the trial court. The record, however, discloses evidence which, if given the weight to which plaintiffs contend it was entitled, tended to show that the escrow officer then employed by the bank had the same understanding of the arrangement as the plaintiffs. This officer, according to the testimony of G. J. Fanning, on several occasions expressed to him the opinion that the escrow agreement provided for the payment to the bank of the balance of the purchase price; and it appears that on November 12, 1925, at his request she signed and delivered to him the following letter, which was written on the letterhead of the bank:

"To G. J. Fanning:

"This is to certify that we have in this escrow sixty-five hundred ($6,500.00) dollars, to be paid upon maturity of

trust deed notes or before if we are instructed by the owner of the property, as per escrow instructions.

"FLORENCE K. PATTON,

"Escrow Officer."

The writer of this letter, who had been discharged by the defendant and, according to the record before us, was under indictment upon a charge growing out of escrow transactions with which one of the Ottos had been connected, testified at the trial as a witness for the plaintiff. According to her testimony the sum mentioned in the letter was represented by checks aggregating that amount which had been deposited by or for the buyer Otto, and were placed by her among the escrow papers, where they remained for several months; that none of the checks were presented for payment or paid, and that no entry was made by her of this part of the transaction, although it was her duty to do so, nor prior to the spring of 1926, when an investigation of conditions in her department was made, did she disclose to any officer of the bank the fact that the checks had been received. The witness, basing her refusal upon the fact that she was under indictment, declined to answer certain material questions asked on cross-examination with respect to this transaction.

Plaintiffs contend that the evidence, together with the testimony of G. J. Fanning that by a mutual mistake of the parties to the escrow agreement the same did not provide that the deposit of $6,500 should be a condition precedent to the delivery of the assignment to the buyer is unimpeached, and for that reason could not be disregarded by the trial court, citing *Stewart* v. *Silva*, 192 Cal. 405 [221 Pac. 191], and *Houghton* v. *Loma Prieta Lumber Co.*, 152 Cal. 574 [93 Pac. 377]. While, as held in those cases, unimpeached testimony cannot be arbitrarily disregarded, nevertheless a jury or a court sitting as such is the exclusive judge of the credibility of witnesses; and the presumption of the truthfulness of such witnesses may be overcome both by the character of their testimony and their motives (Code Civ. Proc., sec. 1847). Here the trial court was not bound by the opinion of the escrow officer as to the meaning of the escrow agreement; and, in view of the circumstances shown, was justified in rejecting the statement of fact contained in her letter above quoted. Moreover, the testimony of the witness Otto quoted above contradicted the claim of

the plaintiff last named that the payment of the balance of the purchase price was understood or intended by the parties to be a condition precedent to the delivery of the assignment or that any part of this sum should be collected by the defendant.

■ It is also contended that the trial court erroneously excluded the testimony of the plaintiff last named as to his understanding of the legal effect of the escrow agreement when he signed the same, but we find no error in this ruling.

■ The further claim is made that the authority of the judge before whom the case was tried terminated before the filing of his decision and that the judgment is consequently void. The trial was had on November 29, 1926, before Hon. Elias V. Rosenkranz, a judge of the municipal court of the city of Los Angeles, who, on November 6, 1926, was assigned by the Judicial Council of the state of California to sit as a judge of the superior court of that county "for the term beginning November 8, 1926, and ending December 31, 1926, and thereafter to act as such until all matters submitted to you prior to said December 31 are disposed of by you." The cause was submitted for decision on the date tried, and the findings of fact, conclusions of law and judgment were filed on January 8, 1927. These acts were expressly authorized by the above assignment and there is no merit in the contention that jurisdiction was lacking.

After a review of the evidence we are convinced that the conclusions of the trial court were fully supported, and the judgment is accordingly affirmed.