[Civ. No. 1727.    Third Appellate District.—November 24, 1917.]

## STEPHEN RAFTIS, by His Guardian ad Litem, Appellant, v. McCLOUD RIVER LUMBER COMPANY (a Corporation), Respondent.

NEGLIGENCE—ACTION FOR DEATH OF SAWMILL OPERATIVE—EVIDENCE— CONTRACT OF CORPORATION—SUFFICIENCY OF EXECUTION.—In an action for personal injuries received by a person who was originally employed by a sawmill corporation to work in its box factory, and who thereafter went to work in the lathmill which was conducted on the premises by a private party under a contract with the sawmill corporation, the contract was properly admitted in evidence upon the testimony of the person who signed the same on behalf of the corporation as assistant to the president, to the effect that he was general manager and had authority to execute any contract pertaining to the business, notwithstanding no corporate seal was affixed nor resolution passed authorizing the execution of the contract.

ID.—MASTER AND SERVANT—CONTRACT—RELATIONSHIP OF EMPLOYEE AND INDEPENDENT CONTRACTOR.—A contract by a private party with a sawmill company, by which the former bound himself to manufacture laths from material furnished by the company at a certain price, the former to furnish all labor and have charge of and be responsible for all machinery, though the company furnished all belts, saws, oils, etc., the employees to be carried on the company's pay-rolls, and the wages

paid charged to the former, establishes the relation of employer and independent contractor.

ID.—CORPORATION LAW—POWER OF GENERAL MANAGING AGENT.—If a corporation's business is transacted by a general managing agent, who is suffered to exercise general authority in respect to the business, the corporation is bound by his acts within the scope of the powers assumed by him, in the same manner as if expressly granted. In respect to the management of its business, a general managing agent and superintendent is the representative of the corporation, and may do in the transaction of its ordinary affairs what the corporation itself could do within the scope of its powers.

ID.—AGENCY—EVIDENCE—TESTIMONY OF AGENT.—The rule that the declarations of an agent are as against his principal inadmissible to prove the fact of his agency does not apply to his testimony as a witness in the trial in which such fact is in issue; and consequently the testimony of the agent, unless he is disqualified for some other reason, is competent to establish the fact of his agency and the existence of facts from which the agency may be inferred.

ID.—CHANGE OF EMPLOYMENT—VOLUNTARY ACT OF EMPLOYEE—STATUS OF NEW EMPLOYER—NOTIFICATION BY FORMER EMPLOYER UNNECESSARY.—Where an employee of a sawmill, at the request of a person holding a contract with the company to manufacture lath, voluntarily leaves the mill and goes to work in the lathmill, no legal duty rests upon the sawmill company to inform the employee that the lath manufacturer is an independent contractor, and not a foreman.

APPEAL from a judgment of the Superior Court of Siskiyou County. J. F. Lodge, Judge.

The facts are stated in the opinion of the court.

W. H. Carlin, and L. F. Coburn, for Appellant.

Pillsbury, Madison & Sutro, and Taylor & Tebbe, for Respondent.

BURNETT, J.—This is an action for damages for personal injuries received by plaintiff, who was eighteen years of age at the time he was injured. The complaint is in the usual form, alleging among other things the employment of plaintiff by defendant corporation, and the negligent conduct of defendants, which conduct was the proximate cause of plaintiff's injury. O. R. Benning defaulted. The McCloud River Lumber Company filed an answer denying any negligence on its part, and setting up that plaintiff was at the time of his

injury in the employ of O. R. Benning, with whom it claims to have stood in the relation of independent contractor.

The essential facts as presented to the jury, who found in favor of defendant, may be epitomized as follows: The defendant corporation is the owner of a mill at McCloud, Siskiyou County, used to convert raw timber into finished lumber for the market. On its premises it had established a sawmill, sash and door factory, box factory and lathmill, and in connection with these a hospital. It owned all the machinery in each building and operated it all from a central power plant. However it carried on its business in other departments, as regards the lathmill it contracted with O. R. Benning, and had done so for several years, for the manufacture of the lath. By the terms of the contract the corporation was to furnish material to Benning at a certain price, Benning was to employ his own men, manufacture lath, and sell it back to the corporation at a contract price. Benning's men were paid by the corporation each month at its office, and the amount charged to Benning. In May, 1913, plaintiff was employed by the defendant company in its box factory. It appears that each man upon being employed was given a badge with a number on the front side and with the name of the defendant company on the back. Plaintiff received such a number. While working in the box factory, plaintiff was approached by Benning and asked to work in the lathmill, being offered a raise in salary. Plaintiff accordingly went into the lathmill. He kept his same number, drew his time at the defendant company's office, and received payment on its checks just as he had done in the box factory. While working in the lathmill plaintiff was injured, his left hand being caught in the saws of one of the machines.

The theory upon which plaintiff went to trial was that the defendant company was his employer and Benning its foreman, but that even if Benning was an independent contractor, the company so conducted its operations as to cause plaintiff to believe he was still working for it under Benning as foreman, and, therefore, it is liable in either alternative.

It is at once apparent that if it be decided that an independent contractor relationship existed, it becomes unnecessary to consider any question based on the theory that the relation of master and servant existed between plaintiff and the Lumber Company.

In this connection plaintiff urges that the evidence is insufficient to establish the relation of independent contractor; that the court erred in admitting in evidence a contract made by Benning and F. F. Spencer, as manager of the Lumber Company, and that it erred in refusing to give an instruction intended to embody plaintiff's theory that respondent's remissness in not disillusioning plaintiff of his belief that he was still working for them virtually estopped them from setting up that Benning was not their foreman.

We are of the opinion that the contract was properly admitted and, therefore, that not only did the court commit no error, but the contract, even in the absence of other evidence to be found in the record, sufficiently establishes the independent contractor relationship. By said contract Benning bound himself to manufacture all the laths possible from the material furnished by respondent at a certain price, Benning to furnish all labor, and have charge of and be responsible for all machinery, though defendant corporation furnished all belts, saws, oils, etc. All Benning's employees were to be carried on defendant's pay-roll and the wages paid charged to Benning. On the part of the corporation the contract was signed "The McCloud River Lumber Company, by F. F. Spencer, Assistant to the President." The admissibility of the contract was objected to generally, and upon the ground that it had not been authenticated, there being neither a corporate seal from which authority might be presumed nor a resolution of the board of directors giving authority to Spencer to execute such contract. But the testimony of F. F. Spencer, both direct and on cross-examination, was to the effect that he stood in the position of general manager with full authority "to execute any contract pertaining to the operation of the company's business." And it is now well established in this state that if a corporation's business "is transacted by a general managing agent, who is suffered to exercise general authority in respect to the business, the corporation is bound by his acts within the scope of the powers assumed by him, in the same manner as if expressly granted. In respect to the management of its business, a general managing agent and superintendent is the representative of the corporation, and may do in the transaction of its ordinary affairs what the corporation itself could do within the scope of its powers." (*McKiernan* v. *Lenzen,* 56 Cal. 61; *Greig* v.

*Riordan,* 99 Cal. 316, [33 Pac. 913].)   The contract here clearly
falls within the scope of the authority testified to by Spencer,
and by such testimony it is fully authenticated.   Counsel for
plaintiff labors under some misapprehension as to the true rule
of law when he declares that "it is of course a well-established
principle of law needing the citation of no authority that an
agent cannot by his own testimony establish his authority to
bind his principal."   "The rule that the declarations of an
agent are as against his principal inadmissible to prove the
fact of his agency does not apply to his testimony as a witness
on the trial in which such fact is in issue; and consequently
the testimony of the agent, unless he is disqualified for some
other reason, is competent to establish the fact of his agency
and the existence of facts from which the agency may be in-
ferred."   (2 Corpus Juris, 933.)

But even admitting that the independent contractor rela-
tionship is established (so runs appellant's argument), the
respondent may still be held, since by allowing plaintiff to
keep his badge and receive his time check just as before, and
not informing him of the contract with Benning, it caused
plaintiff to regard Benning as its agent, and, therefore, the
court's refusal to give plaintiff's instruction intended to em-
body this position was reversible error.   The instruction in
its material parts is: "If you find from the evidence in this
case that . . . plaintiff was employed by the defendant cor-
poration, in its box factory . . . and after working in said
box factory . . . he was transferred to the lathmill owned by
the said defendant company, where he worked until the time
he received the injuries complained of, and that no knowl-
edge or intimation was at any time given him by any person
which would cause, or tend to cause, him or any reasonable
person in his position to believe or suspect that any change
of master occurred in connection with his employment and
that . . . plaintiff in good faith believed that he was work-
ing for the defendant corporation," then if you further find
that defendant corporation was negligent and that said negli-
gence proximately caused plaintiff's injury, you must find
for the plaintiff.   The instruction was unwarranted on vari-
ous grounds.   It is uncertain and confusing in that it does
not appear therefrom by whom plaintiff was transferred to
the lathmill, it of course being necessary that said transfer
be made by the defendant company in order that it might be

35 Cal. App.—26

held.   And even assuming that the instruction designated the defendant company, it is contrary to all evidence in the case and, therefore, without any support in the record.   There is nothing whatever to indicate that the defendant company had anything to do with plaintiff's transfer to the lathmill.   It appears, on the contrary, that at the request of Benning and on the promise of more money plaintiff voluntarily, and uninfluenced by any act of the defendant company, went to work in the lathmill.   It cannot be claimed that Benning was respondent's agent nor that he was held out as such.   The contract between the Lumber Company and Benning was made openly and does not appear to have been kept a secret.   That plaintiff did not know of it is, perhaps, his own misfortune. The company did no act to create the belief in the minds of third parties that Benning was their agent, other than to allow him, under his contract, to supervise the operations in its lathmill.   Benning, it is to be noticed, wore no badge such as the employees of the company wore.   Surely no legal duty rested upon respondent, when plaintiff changed from one mill to the other, to inform him of the situation.   Plaintiff was the master of his own acts and it must be assumed acted with his eyes open.   In this respect, therefore, in so far as the instruction intended to state that such a duty rested on the respondent and that it must be held responsible for plaintiff's lack of knowledge, it failed to state the law.   (*Smith* v. *Belshaw,* 89 Cal. 427, [26 Pac. 834] ; *Houghton* v. *Loma Prieta Lumber Co.,* 152 Cal. 574, [93 Pac. 377].)

The case of *Donnelly* v. *San Francisco Bridge Co.,* 117 Cal. 417, [49 Pac. 559], in no way militates against this conclusion. In that case the evidence showed a clear case of ostensible agency.   The prior relations between the parties to the action created a duty upon the defendant therein to notify the plaintiff that their former foreman had become an independent contractor.   In that case the plaintiff did nothing after the contract had been made that he had not done before, nor was there any change whatever in the circumstances surrounding him. In the present case it does not appear that Benning had ever been an agent of the respondent, nor had plaintiff ever worked under him as such.   As already pointed out, nothing appears to have been done by respondent to cause plaintiff to believe that Benning was their foreman at the time of the accident, nor was his transfer to the lathmill directed by respondent,

but was the voluntary act of plaintiff himself.   The court committed no error in refusing to give the instruction.

The above determination of the issue of the independent contractor relationship really disposes of the case and renders unnecessary any discussion of appellant's assignments of error based on the theory that a master and servant relationship existed between plaintiff and defendant corporation. However, it may be said that upon such theory no prejudicial error appears to have been committed, and the jury was justified in rejecting the contention of plaintiff that the accident was due to any negligence of respondent.   The matter is presented quite fully and satisfactorily in the brief of respondent, to which no reply has been made by appellant.   No doubt if any plausible reply could be made it would have been presented by the able counsel for appellant.

The judgment is affirmed.

Chipman, P. J., and Hart, J., concurred.