[Civ. No. 3533. Third Appellate District.—May 29, 1928.]

B. W. SCOTT et al., Appellants, v. LOS ANGELES MOUNTAIN PARK COMPANY (a Corporation), Respondent.

A. J. Bledsoe for Appellants.

Overton, Lyman & Plumb for Respondent.

PLUMMER, J.—Plaintiffs began this action to recover from the defendant the sum of $96,000 as damages alleged to have been suffered by the plaintiffs by reason of the failure of the defendant to convey a certain tract of land in the county of Los Angeles, embracing about 2½ acres, being a part of a larger tract of land alleged to belong to the defendant, situate northwest of Santa Monica, in said county. At the conclusion of plaintiff's case the defendant's motion for a nonsuit was granted and judgment thereon entered. From this judgment the plaintiffs appeal.

The complaint alleges that during the times mentioned therein the defendant was the owner in fee of a large tract of land consisting of several hundred acres in the county of Los Angeles, and that on or about the seventh day of January, 1925, the defendant entered into an agreement with the plaintiffs whereby the defendant agreed to sell to the plaintiffs, and the plaintiffs agreed to buy from the defendant, a part of said tract of land, consisting of 2½ acres, more or less, for the sum of $12,000 per acre, one-quarter in cash and the balance due in one, two, and three year equal payments; the unpaid portion of the purchase price bearing interest at the rate of seven per cent per annum. The complaint then sets forth at length a purported agreement between the defendant and the plaintiffs concerning the execution of escrow papers, the placing of the escrow papers with the Title Insurance and Trust Company of Los Angeles, and then alleges that the agreement for the sale of the premises referred to was executed and delivered on the seventeenth day of January, 1925, setting forth the memorandum of agreement, which is as follows:

"Receipt for Deposit on Sale of Property,

"Los Angeles, California, January 17, 1925.

"Received of B. W. Scott one thousand dollars ($1,000.00), as deposit out of escrow on purchase of approximately two and one-half (2½) acres of land fronting on State Highway and Marquez Road northwest of Santa Monica, as per sketch showing approximate east and west lines. North

line extends to the south side of Marquez Road, and south line of property extends to State Highway fronting Pacific Ocean.

"It is understood and agreed that the Beverly boulevard highway is proposed to go through the south side of this property, and if the Beverly boulevard is constructed as proposed and shown in sketch, the purchaser of this tract is to contribute this right-of-way without cost to the city or county.

"Price and Terms:

"Twelve thousand dollars ($12,000.00) per acre for the approximate acreage of two and one-half (2½) acres.

"Option payments: Cash, or one-fourth cash and the balance one, two and three years, equal payment, at seven per cent (7%) interest from date.

"Los Angeles Mountain Park Company.
"By H. A. Lloyd, Agent.
"B. W. Scott.
"L. Vivia Scott."

It is further set forth in the complaint that the plaintiffs offered to perform all their part of the agreement in accordance with the terms of the memorandum thereof just set forth herein; that the defendant has refused and neglected to make conveyance of the said 2½ acres of land; that the plaintiffs have been damaged by reason thereof in the sum of $96,000. To this complaint the defendant interposed a general demurrer that it did not state a cause of action, and also that the complaint was ambiguous and uncertain in certain particulars. The demurrer was overruled and the defendant answered denying that the corporation executed the memorandum of agreement set forth in plaintiffs' complaint. While it would appear that neither the memorandum of agreement with the sketch attached, nor the allegations of the complaint are sufficient to comply with the provisions of section 1624 of the Civil Code under the decisions of the supreme court in the cases of *Craig* v. *Zelian*, 137 Cal. 105 [69 Pac. 853]; *Eaton* v. *Wilkins*, 163 Cal. 742 [127 Pac. 71]; *Proulx* v. *Sacramento Land Co.*, 19 Cal. App. 529 [126 Pac. 509], and other cases having to do with the same questions, but as the want of identification of the property, either in the agreement or in the complaint, is not argued upon this appeal, we pass this question by. ■

The memorandum of agreement upon which the plaintiffs rely was signed in the following manner: "Los Angeles Mountain Park Company, by H. A. Lloyd, Agent," and the defense was in the court below, and is here, that there is no showing of agency on the part of H. A. Lloyd, and no showing of any ratification by and on the part of the defendant of any action taken in relation to said 2½ acres of land by H. A. Lloyd, or of anything done by him.

A careful reading of the transcript fails to disclose any testimony showing any act on the part of the corporation appointing H. A. Lloyd its agent or authorizing him to enter into any contracts or agreements by or on behalf of the defendant corporation. The minutes of the corporation of a special meeting of its board of directors, under date of January 26, 1925, contains the following:

"Resolved: That the Los Angeles Mountain Park Company accept the offer of $12,000.00 an acre for approximately 2½ acres of land situated between Marquez avenue and the Malibu state highway in parcel 7, subject, however, to the location of Beverly boulevard at that point.

"Resolved, further, that the president and secretary be and are hereby authorized to consummate the sale fixing such conditions and restrictions as they deem necessary, and to execute in the name of this corporation the necessary papers.

"There being no further business, the meeting was adjourned at 2:30 p. m.

"Respectfully submitted,

"CLAUDE A. WAYNE, Secretary."

The record shows that the $1,000 mentioned in the memorandum of agreement was delivered by the plaintiffs to H. A. Lloyd in the form of two checks, one for $100 and one for $900; that these checks were never delivered by him to the corporation, but were held by him for a considerable period of time, and after the date of the institution of this suit, redelivered to the plaintiffs. The record fails to show, in such a form as can be considered herein, the conditions and restrictions which were, or may have been considered necessary by the president and secretary of the corporation, the conditions and restrictions appearing in the record only by way of statement of counsel to the effect that they were intended to prohibit boring for oil and other like explora-

tions upon the premises referred to, and that an offer was made by the defendant to convey by a deed containing such conditions and restrictions, and acceptance thereof refused by the appellants. The only point which we can consider here is the fact that whatever the conditions and restrictions may have been that were to be written into the instrument of conveyance do not appear to have been agreed upon between the parties or accepted by the plaintiffs herein, and to that extent the record fails to show that there was ever a meeting of the minds of the respective parties referred to relative to the sale and purchase of the 2½ acres of land. In other words, the alleged ratification was subject to conditions and restrictions which do not appear to have been agreed upon, and to that extent there never was an unconditional ratification by the defendant of the act of H. A. Lloyd in signing the name of the corporation to the memorandum of agreement relied upon by the plaintiffs. To show that this is true we have only to reverse the situation. In a suit for specific performance by the corporation against the plaintiffs it would have been necessary to show that the conditions and restrictions to be contained or inserted in the instrument of conveyance had been agreed to by the plaintiffs. Thus, if an enforcement could not be had by the defendant against the plaintiffs, it results that a situation is presented where specific performance or enforcement could not be had by the plaintiffs against the defendant. If this is true, no action for damages can be maintained.

In so far as the complaint contains allegations relative to an agreement between the plaintiffs and the defendant acting through H. A. Lloyd for the signing of escrow papers, it is sufficient to state that there is not one word of testimony in the record showing that H. A. Lloyd was ever authorized to act by and on behalf of the defendant in negotiating or consummating any such agreements, or was at any time the authorized agent of the defendant. In this particular we will consider the appellants' contention that the court erred in excluding certain testimony. While the plaintiff, Mrs. Scott, was on the witness-stand she was asked as to a conversation had with a Mr. Myers relative to land situate along the ocean shore. The question asked of the witness was: "Did he tell you who he thought owned it? A. He said that Mr. Bell owned it. Mr. Lloyd would be

the man that he would have to see because he had charge of Mr. Bell's business; that he was his confidential man." Upon motion of counsel for the defendant this answer was stricken out as hearsay. The testimony called for was so clearly hearsay that no citation of authorities is necessary to show the correctness of the ruling of the trial court. While the same witness was on the stand she was asked the following question, intended to elicit a statement of representations made to her by Mr. H. A. Lloyd: "Q. What representations did he make to you with reference to his connection with the defendant in this case?" To which question the respondent objected that it was incompetent, irrelevant, and immaterial, and that the statements made by an alleged agent are not admissible for the purpose of proving his authority. Mrs. Scott was further asked the following question: "Q. What representations (referring to Mr. Lloyd) did he make to you, if any, about the property described in your complaint?" To which the court also sustained the defendant's objection. The court further sustained an objection to a question asked Mrs. Scott as to whether the defendant Lloyd was a director of the defendant company, but afterwards the secretary of the defendant company was permitted to testify that H. A. Lloyd was a director of the company as shown by the records thereof. The court also sustained an objection to the admission in evidence of a by-law of the corporation which reads as follows: "The directors shall have power to conduct, manage and control all affairs and business of the corporation and to make rules and regulations not inconsistent with these by-laws for the guidance of the affairs and management of the affairs of the Corporation."

In support of their contention that the testimony referred to and sought to be elicited was admissible to prove the agency of H. A. Lloyd, the appellants cite the rule stated in 2 Corpus Juris, 933, which reads as follows: "The rule that the declarations of an agent are as against his principal inadmissible to prove the fact of his agency does not apply to his testimony as a witness on the trial in which such fact is in issue; and consequently the testimony of the agent, unless he is disqualified for some other reason, is competent to establish the fact of his agency, and the existence of facts from which the agency may be inferred."

(Citing, also, *Raftis* v. *McCloud River Lumber Co.*, 35 Cal. App. 397 [170 Pac. 176].) That the witness Lloyd might have been placed upon the witness-stand and asked as to all the facts tending to show his authorization to act as an agent for the defendant is really what is supported by the rule just stated, and not what he may have told somebody in relation thereto. This action being between the plaintiffs and the defendant, the witness Lloyd could have testified directly as to his agency by stating whatever there was, if anything, tending to show his appointment or authorization to act as agent, but to put a witness on the stand to testify to what she had heard Mr. Lloyd state or what representations he had made was an entirely different matter and not in anywise supported by the authorities cited, but absolutely contrary thereto. As a matter of fact, the record shows that Mr. Lloyd was placed upon the witness-stand by the appellant, and our attention has not been called to any testimony given by him tending to show his agency for the defendant. The fact that H. A. Lloyd was a director of the corporation does not establish agency. The case of *Maynard* v. *Fireman's Fund Ins. Co.*, 34 Cal. 48 [91 Am. Dec. 672], upon which the appellant relies in support of its contention that proof that one is a director tends to show agency and from the opinion in which case a considerable excerpt is taken, does not support the appellants' contention. What is there said has to do only with the powers of the board of directors, not individual directors. The rule is that the power and authority to manage the affairs of the corporation is vested in the board of directors as a board and not as individual members. (Sec. 305, Civ. Code.) We may also cite *Gashwiler* v. *Willis*, 33 Cal. 11 [91 Am. Dec. 607], and *Alta Silver Mining Co.* v. *Alta Placer Mining Co.*, 78 Cal. 629 [21 Pac. 373]; also, *Citizens Securities Co.* v. *Hammel*, 14 Cal. App. 564 [112 Pac. 731]. To the same effect is the case of *Hotaling* v. *Hotaling*, 193 Cal. 368 [224 Pac. 455]. In line with the cases which we have cited is the case, also, of *Matheron* v. *Ramina Corp.*, 49 Cal. App. 690 [194 Pac. 86], dealing with the authority of officers of a corporation to bind the corporation by contract for the purchase of real property.

That the resolution relied upon by the appellants did not constitute an acceptance, not being absolute, appears by sec-

tion 1585 of the Civil Code, which reads: "Acceptance must be absolute. An acceptance must be absolute and unqualified, or must include in itself an acceptance of that character which the proposer can separate from the rest, and which will conclude the person accepting. A qualified acceptance is a new proposal." (*Four Oil Co.* v. *United Oil Producers,* 145 Cal. 623 [68 L. R. A. 226, 79 Pac. 366] ; *Niles* v. *Hancock,* 140 Cal. 157 [73 Pac. 840, 842], and cases cited on page 161.) Other authorities might be cited, but these state the accepted rule.

██ We need not consider the appellants' argument relative to their offer to comply with the memorandum of agreement, for the reason that, as we have stated, the record is silent as to the conditions and restrictions to be contained in the deed of conveyance and of any acceptance thereof. Nor do we need to consider the appellants' tender of proof to the trial court that they had been offered a sum of money for the 2½ acres of land in excess of the agreed purchase price. Neither do we need to consider the question of estoppel, for the reason that the testimony in the record shows that the two checks representing the $1,000 were never accepted by the defendant.

The judgment is affirmed.

Bartlett, J., *pro tem.*, and Finch, P. J., concurred.